UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JONATHAN ZIEGLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-CV-01577-JAR |
| | ) |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Jonathan Ziegler, an independent journalist, claims that, on September 15, 2017, during peaceful protest activity following the verdict in State of Missouri v. Stockley, St. Louis Metropolitan Police Department (SLMPD) officers unlawfully "kettled,"[1] pepper sprayed, assaulted, and arrested him. Ziegler brings this civil rights action under 42 U.S.C. § 1983 against several SLMPD officers alleging violations of his First, Fourth, and Fourteenth Amendment rights, and against the City of St. Louis alleging municipal liability for their unlawful actions. Ziegler also brings supplemental state law claims against Defendants, alleging assault, intentional and negligent infliction of emotional distress, and battery. This is one of several cases arising out of SLMPD officers' conduct with respect to the Stockley protests.

As have the defendants in the other cases, the City and six supervising individual officers ("Supervisors") named as defendants here move to dismiss or, alternatively, to strike Ziegler's second amended complaint. For the following reasons, the Court will dismiss Ziegler's failure-

---

[1] According to the complaint, "kettling" is a law enforcement tactic by which officers encircle a group of protestors without providing a means of egress. (Second Amended Complaint [hereinafter, SAC], Doc. No. 34 at ¶¶ 68-74).

to-train claim and demand for punitive damages on the state-law claims against the City and the Supervisors in their official capacities only; the Court will otherwise deny the motion.

**I.     Background**

Taken as true for the purpose of this motion, the facts alleged in the second amended complaint are as follows. On September 15, 2017, the Circuit Court of the City of St. Louis issued its findings and verdict of acquittal in Stockley, prompting some members of the public to engage in protests around the City. The protests concerned not only the verdict but broader issues, including racism in the criminal justice system and the use of force by police against African-American citizens. Although the vast majority of the demonstrations were nonviolent, SLMPD officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying [chemical agents]." (SAC at ¶ 28).

Ziegler was covering the protests in and around the mixed-use area near the intersection of Washington Avenue and Tucker Boulevard. While he was there, SLMPD officers in riot gear formed two lines across Tucker, approximately half a block from the intersection in either direction, and a third line across Washington, one block to the west. A fourth line of officers stood behind bicycles, blocking Washington to the East, forming a perimeter around the intersection. In addition to protestors, the perimeter encircled residents and business patrons who were in the area for non-political reasons. Nevertheless, Lieutenant Colonel Gerald Leyshock directed officers to arrest everyone present, and all four lines of officers began marching forward, banging their shields in unison with the wooden batons they were carrying. As the cordon closed, people raised their arms, lay on the ground, sat, or crouched to demonstrate that they were not a threat to police. Others, including Ziegler, attempted to pass peacefully through the lines but were pushed back toward the intersection.

At some point, and without warning, officers began indiscriminately deploying chemical agents on the protestors and others caught in the cordon. Six different officers pepper sprayed Ziegler in the face before he was arrested by Burle. Then, as Ziegler lay on his stomach with his hands zip-tied behind his back, an officer pepper sprayed him in the mouth and knelt or stood on his back to force his face into the concrete street. Officers transported Ziegler to jail but never provided him medical care.

Ziegler claims he complied with all directions from SLMPD officers and that he was not engaged in unlawful activity at any time during his encounter with police. Ziegler further alleges that during and after the arrests, SLMPD officers were observed high fiving each other, smoking celebratory cigars, taking "selfies" on their cell phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!" (SAC at ¶ 95-96).

Ziegler's thirteen-count second amended complaint names the City and several SLMPD officers alleged to be involved in the events of September 17, 2017: Leyshock, the incident commander directing all of the supervisors that evening who allegedly approved the plan to restrict the movement of individuals attempting to leave the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present; Lieutenant Timothy Sachs, who was in direct command and responsible for deploying tactical units and allegedly developed the plan described above; Lieutenant Scott Boyher, who was supervising SLMPD bicycle officers that evening and allegedly directed the officers under his command to use force and arrest the protestors; Sergeant Randy Jemerson, a supervisor with the SLMPD's Civil Disobedience Team who allegedly directed people to the intersection of Washington Avenue and Tucker Boulevard pursuant to the plan described above; Sergeant Matthew Karnowski, who allegedly declared the protests an "unlawful assembly," and directed the officers under his command to "push [the protestors]

north" toward Washington Avenue and Tucker Boulevard; and Sergeant Brian Rossomanno, who also allegedly directed people to the intersection, and was "within arms-length" of the officers who pepper sprayed and beat the protestors. Ziegler also names Burle as the arresting officer, as well as John Does #1-5, who were further involved in arresting, pepper spraying, and assaulting him but who removed their name tags and wore masks concealing their faces, thereby preventing Ziegler from identifying them.

Ziegler asserts unlawful arrest (Count I), First Amendment (Count II), and excessive force (Count XII) claims against the individual officers pursuant to § 1983. He also asserts § 1983 claims against the City (Count IV) alleging municipal liability for the officers' unlawful actions and against all Defendants (Count III) alleging that Defendants "acting in their individual capacities and under color of law, conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated Plaintiffs' civil rights." (SAC at ¶ 171). Finally, Ziegler asserts supplemental state-law claims against all Defendants alleging assault (Count V), false arrest (Count VI), false imprisonment (Count VII), abuse of process (Count VIII), malicious prosecution (Count IX), intentional infliction and negligent infliction of emotional distress (Counts X and XI), and battery (Count XIII).

The City and Supervisors move to dismiss the second amended complaint for failure to comply with the "short and plain statement" requirement of Fed. R. Civ. P. 8(a). Alternatively, the City and the Supervisors move to strike certain paragraphs of the amended complaint under Fed. R. Civ. P. 12(f) as immaterial or impertinent. (Doc. No. 37).

The Supervisors also move to dismiss Ziegler's § 1983 claims under Rule 12(b)(6), arguing that Ziegler fails to allege they personally participated in the use of force. (Id. at 10). As to the state-law claims, the Supervisors argue they should be dismissed under Missouri's official

immunity doctrine. (Id. at 13-15). The Supervisors and the City also argue that the infliction of emotional distress claims are not actionable because the same facts give rise to another cognizable tort, namely, assault, and that the claims alleging battery and assault are duplicative. (Id. at 10-11).

The City moves to dismiss Ziegler's § 1983 conspiracy claim on the grounds that it is barred by the intracorporate conspiracy doctrine, citing Kelly v. City of Omaha, 813 F.3d 1070, 1078 (8th Cir. 2016). The City contends that, as the Eighth Circuit held in Kelly, a local government entity cannot conspire with itself through its agents acting within the scope of their employment. The City further argues the civil conspiracy claim fails because the underlying claims on which it is based fail. (Id. at 8-10).

Next, the City moves to dismiss Ziegler's § 1983 claim, arguing that it fails to adequately allege municipal liability under Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). (Id. at 4-8). Finally, the City argues that Ziegler's state-law claims against it are barred by sovereign immunity and that, in any event, Mo. Rev. Stat. §537.610.3 precludes the recovery of punitive damages against it on the state-law claims. (Id. at 10).

Other judges in this District have addressed these legal arguments in Stockley protest cases. See Laird v. City of St. Louis, Mo., No. 4:18-CV-01567-AGF, 2019 WL 2647273 (E.D. Mo. June 27, 2019); Laney v. City of St. Louis, Mo., No. 4:18 CV 1575 CDP, 2019 WL 2423308 (E.D. Mo. June 10, 2019); Aldridge v. City of St. Louis, Mo., No. 4:18-CV-1677 CAS, 2019 WL 1695982 (E.D. Mo. Apr. 17, 2019); see also Alston v. City of St. Louis, Mo., 4:18-CV-01569-AGF, 2019 WL 2869896 (E.D. Mo. July 3, 2019). Upon careful consideration of the briefs and the record in this case, the Court finds the reasoning in these cases applies equally to the arguments asserted by the parties here and therefore comes to the same conclusions.

## II. Legal standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's claims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. Torti v. Hoag, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." Id.

Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In Twombly, the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555; accord Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief "that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Drawing on its "judicial experience and common sense," the Court must consider the plausibility of plaintiff's claim as a whole, not the plausibility of each individual allegation. Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010). The factual allegations must be sufficient to "'raise a right to relief above the speculative level.'" Parkhurst v. Tabor, 569 F.3d 861, 865 (8th Cir. 2009) (quoting Twombly, 550 U.S. at 555).

Rule 10(b) provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." "[A]ny redundant, immaterial, impertinent, or scandalous matter" may be stricken from the complaint. Fed. R. Civ. P. 12(f). Although courts enjoy "broad discretion" in determining whether to strike a party's pleadings, such an action is "an extreme measure." Stanbury Law Firm, P.A. v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000). Accordingly, motions to strike are "viewed with disfavor and are infrequently granted." Id.

### III. Discussion

**A. Motion to Dismiss Under Rule 8(a) and Alternative Motion to Strike**

The City and the Supervisors move to dismiss the amended complaint for failure to comply with the "short and plain" statement requirement of Rule 8(a), arguing that the complaint is "replete with tendentious, inflammatory, and immaterial allegations attacking the integrity of Missouri courts, injecting issues to which defendants cannot possibly frame a response …" (Doc. No. 37 at 2). Specifically, the City and Supervisors object to Ziegler's allegations concerning the Stockley verdict, the nature of public protests in response thereto, and prior orders of this Court concerning SLMPD actions in response to public protests. Alternatively, the City and the Supervisors move to strike these paragraphs under Rule 12(f) as immaterial or impertinent. [2]

As other judges in this District have held with respect to the same challenge in related cases, the complaint's factual allegations and the supporting exhibits to which the City and Supervisors object are relevant to Ziegler's municipal liability claim at a minimum. Laird, 2019 WL 2647273, at *4; Laney, 2019 WL 2423308, at *3; Aldridge, 2019 WL 1695982, at *4;

---

[2] Specifically, Defendants move to strike the allegations at ¶¶ 19-24, 26-27, 36-40, 43, 52, and 115-125.

Alston, 2019 WL 2869896, at *3. Neither dismissal under Rule 8(a) nor striking under Rule 12(f) is warranted.

**B. Motion to Dismiss Under Rule 12(b)(6)**

**1. Individual Liability of Supervisors Under § 1983**

The Supervisors argue that there is no *respondeat superior* liability under § 1983 and that to state a claim against a supervisory police officer on the basis of a subordinate's use of force, a plaintiff must allege personal participation by the supervisor in the tort, at least to the extent of "tacit collaboration." In other words, assuming liability of defendant Does #1-5, the Supervisors must have either been aware of the alleged unlawful conduct or tacitly approved it. Ziegler has made no such allegations against the Supervisors.

Although the doctrine of *respondeat superior* does not apply to § 1983 cases, a supervisor may still be individually liable under § 1983 "(1) if the supervisor directly participated in the constitutional violation; (2) if the supervisor failed or refused to intervene when a constitutional violation took place in his presence; (3) if the supervisor's failure to train or supervise the employee caused the constitutional violation; or (4) if the supervisor created a policy or custom under which the constitutional violation occurred." B.J.G. ex rel. McCray v. St. Charles Cty. Sheriff, No. 4:08CV1178 CDP, 2010 WL 1838414, at *3 (E.D. Mo. May 6, 2010) (citations omitted), *aff'd subnom.* B.J.G. ex rel McCray v. St. Charles Cty. Sheriff, 400 F. App'x 127 (8th Cir. 2010). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." Ottman v. City of Indep., Mo., 341 F.3d 751, 761 (8th Cir. 2003).

Ziegler alleges that the officers' use of zip-cuffs, kettling, and pepper spray each constituted excessive force. Without deciding whether each of these actions could in fact

constitute excessive force, at this stage of the proceedings, Ziegler adequately alleges the Supervisors' direct involvement in these actions. Ziegler alleges specific facts describing each of the Supervisor's roles in planning, approving, and executing the alleged uses of force. Thus, the Court will deny the Supervisors' motion to dismiss the § 1983 claims.

**2. Civil Conspiracy Claim**

The City moves to dismiss Ziegler's § 1983 conspiracy claim on the grounds that it is barred by the intracorporate conspiracy doctrine. The Eighth Circuit has applied the doctrine, which provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment," to conspiracy claims under 42 U.S.C. § 1985, see Kelly, 813 F.3d at 1078, but has not addressed the applicability of the doctrine to § 1983 conspiracy claims. In the absence of such direction from the Eighth Circuit, judges in this District—including in other Stockly protest cases—have declined to extend the doctrine's reach, at least at the pleading stage. See Aldridge, 2019 WL 1695982, at *8 (collecting cases); Laird, 2019 WL 2647273, at *5. Likewise, the Court declines to apply the intracorporate conspiracy doctrine at this stage of the proceedings.

The Court is not persuaded by the City's argument that the conspiracy claim fails because the underlying claims fail; having found that a constitutional violation might be proved on Ziegler's underlying claims, the City's argument lacks merit, the City's motion to dismiss Ziegler's § 1983 civil conspiracy claim on this basis will be denied.

**3. Monell Claims against the City**

In Count IV, Ziegler alleges the following policies, practices, or customs of the SLMPD caused the alleged constitutional violations in this case, making the City liable under Monell:

a. SLMPD officers' routine use of excessive force when policing protests, especially those at which police brutality is being protested;

b. SLMPD custom or policy of using kettling without warning on citizens who are not resisting arrest and who are exercising First Amendment rights, whether those rights be protesting or reporting;

c. SLMPD's policy or custom of issuing vague and even contradictory dispersal orders without giving an opportunity to comply;

d. SLMPD's policy of arbitrarily declaring unlawful assemblies in the absence of any threat or force or violent activity that provides no notice to citizens or unlawful conduct;

e. Additionally, SLMPD has a custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

(SAC at ¶ 183). Ziegler further alleges that the City "inadequately trained, supervised, and disciplined SLMPD officers, with respect to its officers' use of kettling and use of force." (Id. at ¶ 184).

For § 1983 liability to attach to the City, Ziegler must show that a constitutional violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. Mick v. Raines, 883 F.3d 1075, 1079 (8th Cir. 2018). In its motion to dismiss, the City argues that Ziegler's factual allegations are insufficient to establish any of these bases for liability.

### a. Official Policy or Custom

As other judges in this District have held with respect to similar Monell allegations in the related cases, Ziegler's second amended complaint plausibly alleges that specific SLMPD policies or customs were the moving force behind the constitutional violations they suffered. See Laird, 2019 WL 2647273, at *5; Aldridge, 2019 WL 1695982, at *9; Laney, 2019 WL 2423308, at *5. Specifically, Ziegler alleges a pattern of using chemical agents without warning against peaceful protestors complaining of police actions, including incidents in October and November

2014, in May and August 2015, and in July 2017; as well as other incidents that occurred after the Stockley verdict on September 15, 2017. Ziegler also alleges that the City entered into a settlement agreement in March 2015 in Templeton, et al. v. Dotson, et al., No. 4:14-CV-2019 CEJ (E.D. Mo.), in which it agreed not to use chemical agents to disperse groups of individuals engaged in non-criminal activity without first issuing clear and unambiguous warnings that such chemical agents would be used and without ensuring that there is a means of safe egress from the area (among other protections), but that SLMPD officers continue to use chemical agents against non-violent protestors without adequate warning or opportunity to comply. These factual allegations are sufficient to support the existence of an unconstitutional policy or custom that plausibly caused the constitutional violations here. The City's motion to dismiss Ziegler's Monell claims based on an unconstitutional policy or custom will therefore be denied.

**b. Failure to Train or Supervise**

The City argues that Ziegler fails to allege any facts to plausibly state a § 1983 claim for failure to train or supervise. To state a viable § 1983 claim against the City for failure to train or supervise, Ziegler must plead facts sufficient to show that: 1) the City's police officer training and supervision practices were inadequate; 2) the City was deliberately indifferent to the rights of others in adopting these practices, such that the City's failure to train and supervise was a result of deliberate and conscious choices; and 3) the City's training and supervision deficiencies caused Ziegler's constitutional deprivation. See Ulrich v. Pope Cty., 715 F.3d 1054, 1061 (8th Cir. 2013) (citation omitted).

Although the second amended complaint pleads sufficient facts to plausibly show the City had notice of a pattern of unconstitutional acts committed by SLMPD officers with respect to using chemical agents against peaceful protestors without first giving warning, it does not

plead facts sufficient to establish the remaining elements of a claim for failure to train and supervise. Instead, Ziegler concludes that the "City has inadequately trained, supervised, and disciplined SLMPD officers, with respect to its officers' use of kettling and use of force." (SAC at ¶ 184).

The Court agrees with the judges in the related cases, who have held that such an allegation, alone, is insufficient to state a claim. See Laird, 2019 WL 2647273, at *6; Aldridge, 2019 WL 1695982, at *11; Laney, 2019 WL 2423308, at *6. The Court will therefore grant the City's motion to dismiss Ziegler's Monell claim to the extent it is based on the City's alleged failure to supervise, train, and discipline SLMPD police officers.

### 4. State Law Claims

#### a. Sovereign Immunity

"[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]" Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors, 476 S.W.3d 913, 921-22 (Mo. banc 2016). Missouri law provides three statutory exceptions to sovereign immunity, including, as relevant here, when a political subdivision purchases liability insurance to cover certain tort claims, in the amount of and for the purposes covered by the insurance purchased. Mo. Rev. Stat. § 537.610.1; see also Hammer v. City of Osage Beach, 318 F.3d 832, 841 (8th Cir. 2003). "[A] plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity" by pleading the existence of insurance and that the insurance covers the plaintiff's claim. Epps v. City of Pine Lawn, 353 F.3d 588, 594 (8th Cir. 2003).

Here, as to each state law claim, Ziegler alleges that:

> Defendant City of St. Louis obtains insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City.
>
> Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2017 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters ...."
>
> By possessing such insurance or self-insurance, the City has waived sovereign immunity on state claims pursuant to § 537.610.1, RSMo.

(SAC at ¶¶ 193-95.)

Once again, the Court agrees with the other judges in this District who have held that the same or similar allegations of PFPC insurance or self-insurance are sufficient at this stage to demonstrate that plaintiffs' state-law tort claims fall within an exception to sovereign immunity under § 537.610.1. See, e.g., Laird, 2019 WL 2647273, at *6; Laney, 2019 WL 2423308, at *7; Aldridge, 2019 WL 1695982, at *13; see also Fortenberry v. City of St. Louis, No. 4:18-CV-01937-JCH, 2019 WL 1242671, at *7 (E.D. Mo. Mar. 18, 2019). The Court will therefore deny the City's motion to dismiss Ziegler's state-law tort claims on the basis of sovereign immunity.

### b. Official Immunity

Official immunity "protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts." Reasonover v. St. Louis Cty., Mo., 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted). "[A] police officer's decision to use force in the performance of his duties is discretionary rather than ministerial." Davis v. White, 794 F.3d 1008, 1013 (8th Cir. 2015) (citation omitted). However, "official immunity does not apply to discretionary acts done in bad faith or with malice." Id. "Acting with malice requires an actual intent to cause injury." Wealot

v. Brooks, 865 F.3d 1119, 1129 (8th Cir. 2017) (citing State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 447 (Mo. 1986)). "A finding of bad faith embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive." Id.

At this stage of the proceedings, Plaintiff's allegations state facts from which it could be reasonably inferred that the Supervisors acted in bad faith or with malice by participating in the kettling, use of pepper spray without warning, and arrest of Ziegler, who was not engaged in any unlawful activity. See Laird, 2019 WL 2647273, at *7; Laney, 2019 WL 2423308, at *8; Aldridge, 2019 WL 1695982, at *14. The Court will deny the Supervisors' motion to the extent it is based on official immunity.

### c. Allegedly Duplicative Claims

Defendants argue that Ziegler cannot state a claim for infliction of emotional distress because he has also pleaded an assault claim. Defendants' contention is meritless. Under Missouri law, the torts of intentional and negligent infliction of emotional distress are "intended to supplement existing forms of recovery," provided that the elements of such claims are adequately pled. See Sansonetti v. City of St. Joseph, 976 S.W.2d 572, 580 (Mo. Ct. App. 1998), *abrogated on other grounds* by Delana v. CED Sales, Inc., 486 S.W.3d 316 (Mo. 2016). Defendants do not dispute that Ziegler adequately pled facts in support of the elements of these claims.

Likewise, "assault and battery are two distinct causes of action." Devitre v. Orthopedic Ctr. of St. Louis, LLC, 349 S.W.3d 327, 335 (Mo. 2011). Although Ziegler may not recover duplicative damages, pleading alternative legal theories is permissible under the Federal Rules of

Civil Procedure. See Fed. R. Civ. P. 8(d). Defendants' motion to dismiss these claims for failure to state a claim will be denied.

### d. Punitive Damages

Because Ziegler's claims against the Supervisors in their official capacities are equivalent to claims against the City itself, Ziegler is barred from recovering punitive damages from the Supervisors in their official capacities. Thus, the Court will strike Ziegler's demand for punitive damages on his state law claims against the City and against the Supervisors in their official capacities only.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss and Alternative Motion to Strike [37] is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** only as to the failure-to-train claim in Count IV (the remainder of Count IV survives dismissal) and the demand for punitive damages on the state-law claims against the City of St. Louis and against Gerald Leyshock, Timothy Sachs, Scott Boyher, Randy Jemerson, Matthew Karnowski, Brian Rossomanno, and Matthew Burle in their official capacities. The motion is **DENIED** in all other respects.

A Rule 16 Scheduling Conference will be set by separate order.

Dated this 12th day of February, 2020.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE